# FLITTER LORENZ, P. C.

### ATTORNEYS AT LAW

CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

450 N. NARBERTH AVENUE, SUITE 101
NARBERTH, PENNSYLVANIA 19072
610-CONSUMERS
610-266-7863
610-667-0552 (FAX)
WWW.CONSUMERSLAW.COM

MARLTON, NJ
856-396-0600

EMAIL: CFLITTER@CONSUMERSLAW.COM
DIRECT DIAL: 610-822-0782

March 6, 2015

Clerk of the Court
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**RE:**   **Thomas N. Graff, an individual; of behalf of himself and all others
similarly situated v. United Collection Bureau, Inc., an Ohio Corporation
U.S.D.C. E.D. NY, Docket No. 12-cv-02402(GRB)
Subj: – Objection of Bradley Good**

Dear Sir or Madam:

Class member Bradley Good hereby objects to the proposed class action settlement. As set forth below, the proposed settlement is not fair, reasonable, nor adequate,  because it releases broad categories of claims for damages, pled and unpled, for no consideration at all.  In addition, the class notice is defective for several reasons: The postcard gives a misleading statement of what class members are releasing; the postcard fails to apprise class members about attorney fees sought by class counsel, and the notice fails to apprise class members that the settling parties have waived their right to hearing by an Article III judge. In addition, the final decision whether to approve or reject the proposed settlement is not properly made by a magistrate judge. Finally, the proposed settlement improperly requires class member objectors to sign their objections, even if represented by counsel.

Clerk of the Court
March 6, 2015
Page 2

I.  **The Relief Provided By The Settlement Is Not Fair, Reasonable, and Adequate.**

A court may approve a class action settlement "only if it is fair, reasonable and adequate." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (quoting Rule 23(e)(2)) (internal quotations omitted). The Court presented with a proposed settlement must also evaluate substantive fairness, including the nine settled *Grinnell* factors. *Id.*

Instantly, the proposed settlement provides for the class members to receive no money – zero. The class representative is proposed to receive $2,500 and a *cy pres* payment of $39,819 is proposed to be made to a consumer non-profit. In exchange for these payments, at least 526,954 class members (but maybe 650,000 or more, Doc. 58-2, p. 5 of 41) across the United States will release "any and all claims for damages, including unknown claims for such relief arising out of or related to the factual allegations and legal claims asserted in the action arising out of federal or state law, including but not limited to any and all such claims relating to defendant's use of messages on telephone answering devices." Stipulation of Settlement, ¶ 4.2 (Docket 58-2, p. 15 of 21). Further, the class members (and "any of their respective heirs, spouses, executors, administrators, partners, attorneys", etc.) release all claims or causes of action under state or federal law, known or unknown, asserted or unasserted, alleged in the Complaint or Amended Complaint "and/or *any claims that could have been brought* arising out of the allegations set forth in the Complaint and/or Amended Complaint." Release, ¶ 4.3 (emphasis added). Indeed, the release sections, ¶ 4.2, 4.3 and 4.4 run on for nearly 1 ½ full pages. Presumably the sweeping release bars claims for telephone abuse or harassment under the FDCPA, 15 U.S.C. § 1692f, and even claims arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227, for improper calls to a consumer's cellphone. *See e.g., Levy v. Receivables Perf. Mgmt, LLC*, 972

Clerk of the Court
March 6, 2015
Page 3

F.Supp.2d 409 (E.D.N.Y. 2013).  Statutory damages for violation of the TCPA range from $500

to $1500 per call.  *Id.* at 424 *citing* 47 U.S.C. § 227(b)(3).

The ostensible reason for class members relinquishing these potentially valuable claims

for no compensation is said to be one of arithmetic.  That is, when the asserted 1% of net worth,

$39,819.43, is divided by the stated 526,954 class members, the result would be $0.07, *i.e.*, "de

minimis."  *See* Plaintiff's Memorandum of Law in Support of Consent Motion for Preliminary

Approval (Docket 58-1, p. 16, p. 22 of 24).[1]

Although a *cy pres*-only class settlement may be appropriate in cases where class

members' claims are of very small value, here, the claims have significant value that is made

small only by the settling parties' choice to define the class so broadly. Notably, no mention was

made in the moving papers of why the settlement class included not only all affected New

Yorkers, but all affected consumers in the 50 United States.  As now proposed, consumer debtors

from every state who received a call from UCB during a several year period would surrender all

manner of claims.  The law is settled, in this district and elsewhere, that a settlement class under

the Fair Debt Collection Practices Act need not be nationwide.  *Mace v. VanRu Credit Corp.*,

109 F.3d 338, 343-44 (7th Cir. 1997).  In *Mailloux v. Arrow Financial Services*, 204 F.R.D. 38

(E.D.N.Y. 2001), this court, citing to *Mace*, recognized that there are "several problems arising

from requiring nationwide certification in FDCPA cases [including] the problem of *de minimis*

---

[1]     The Settlement Agreement and motion for approval lists class size as "at least 526,954
potential settlement class members" but goes on to state – quite incredibly – that the class "may
ultimately exceed 650,000 individuals."  Settlement Agreement, Sec. "E" (Docket 58-2, p. 5 of
41).  The moving papers do not attempt to explain this huge disparity in the number of class
members, nor how the parties could have given adequate notice if they did not know who is in
the class.

Clerk of the Court
March 6, 2015
Page 4

recovery." *Mailloux* at 43.  Rather, certifying a class limited to "a specific geographic area," *id.,* will be more manageable and obviously result in a far more substantial per capita recovery. *Accord Diaz v. Residential Credit Solutions, Inc.*, 297 F.R.D. 42, 54 (E.D. N.Y. 2014) ("The court agrees with the plaintiff [that] the language of the FDCPA does not support the conclusion that the statute requires nationwide class certification.").

No doubt, the defendant here is anxious to purchase *res judicata* in the broadest possible scope at the cheapest price.  But that is not the test for whether a proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2).  No reason was proffered in the moving papers as to why the settlement class is not limited to New York, or to the Eastern District of New York, or to the county of Mr. Graff's residence.  There is no viable reason to define the class(es) so broadly and thereby bar all claims of consumers in Pennsylvania (Mr. Good) and the rest of the country, while concomitantly reducing the payout to effectively nothing.  In any case, a broad release of all manner of claims known and unknown, asserted and unasserted for "at least 526,954" class members  in exchange for no compensation, a small *cy pres* payment and $175,000.00 in class counsel fees is not fair, reasonable or adequate, nor is it a superior means of resolution as required by Rule 23(b).  Rather, this proposed settlement is a paradigm bad settlement for consumers.

## II.     The Class Notice Is Fatally Defective.

Due process requires that absent class members receive adequate notice in order for their rights to be compromised through settlement. Proper notice "should describe the action and *the plaintiffs' rights in it*." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)(*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314-15 (1950).  More specifically,

Clerk of the Court
March 6, 2015
Page 5

a class-action settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation and internal quotation marks omitted). The class notice here did not satisfy those standards with respect to two crucial components of the settlement: (a) what class members are giving up, and (b) how much class counsel seeks in attorney fees.

**A.** The postcard notice states that by opting out, a class members "keep the right to sue UCB separately about the legal claims raised in the lawsuit. … Retaining your right to sue UCB may be important if you believe you have a claim for actual damages against UCB." Stipulation of Settlement, Ex. 1. In fact, each class member is also giving up the right to sue UCB for the greater of actual damages or statutory damages of up to $1000. 15 U.S.C. § 1692k(a). Yet the postcard misleads class members about the possibility of individual statutory damages, suggesting instead that those damages may be limited to 7 cents each.

The long-form notice does not cure the flaw. To begin with, given that the postcard represents that class members are giving up their right only to 7 cents and the possibility of actual damages, the postcard gives class members little reason to investigate further by going online to find the long-form notice. In any event, the long-form notice also does not make clear what a class member is giving up. That notice, in section 8, says "What am I giving up if I remain in the Settlement?" The notice answers that the class member is giving up the right to sue for "statutory and actual damages," Stipulation of Settlement, Ex. 2, at 4, but does not explain what "statutory damages" are or where the member might find out. (The same phrase appears,

Clerk of the Court
March 6, 2015
Page 6

also without explanation, in the box on page 1 entitled "IF YOU DO NOTHING." *Id.* at 1.) It is not until she reaches the section 14, headed "Is this a fair settlement?" that a class member would learn about the possibility of obtaining statutory damages of up to $1000. *Id.* at 6.

The adequacy of notice is measured by the "average class member." An average person who does not have actual damages is unlikely to understand from the postcard notice that by remaining in the settlement class, she may be giving up $1000. Moreover, having received a postcard telling her that little or nothing is at stake, the class member is unlikely to read the long-form notice, assuming *arguendo* he or she could find it. Even if she does, she might well determine, based on section 8's description of what she is forfeiting, that she need not read further because she is only losing "actual damages"—only the unexplained "statutory damages." After the postcard and the first discussion in the long-form notice, the likelihood that an average person who does not believe she has actual damages reaches the explanation of section 14 of the long-form notice is quite remote.

Moreover, in an FDCPA case, the "average class member" is not just an average person, but presumptively the "least sophisticated consumer." *E.g., Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012). To expect this person to read on given the misleading statement in the postcard and the cryptic references in the long form notice down to section 14 where the $1000 figure finally appears is unrealistic. Accordingly, most class members will not be notified that they are giving up the possibility of obtaining a significant amount of money in an individual suit, even if they do not have actual damages. Because the notice is inadequate, the settlement should be rejected.

Clerk of the Court
March 6, 2015
Page 7

**B.**    Pursuant to the Agreement of Settlement, ¶ 3.2 and the Order of Preliminary

Approval, class members, including your objector, were to be notified via a "short form notice"

*i.e.*, a postcard.   Although a long form notice is available for inspection on the website, the

postcard was the only form of notice mailed to the class.   The mailed notice is fatally defective

for failing to advise the class members whether class counsel would be seeking attorney's fees

and if so, in what amount.   This short-coming is especially significant here, where there is no

money whatever being paid to the class members but $39,819.00 to a *cy pres* recipient and (as it

appears from the Agreement of Settlement) $175,000.00 to be paid by defendant to class

counsel.

F. R. Civ. P. 23(h) provides that an application for class counsel fees must be "directed to

class members in a reasonable manner."

The Advisory Committee Notes to subdivision (h) of Rule 23 are instructive[2]:

> Fee awards are a powerful influence on the way attorneys initiate,
> develop and conclude class actions.
> 
> ***
> 
> Subdivision h applies to 'an action certified as a class action.'  This
> includes cases in which there is a simultaneous proposal for class
> certification and settlement even though technically the class may
> not be certified unless the Court approves the settlement pursuant
> to review under Rule 23(e).   When a settlement is proposed for
> Rule 23(e) approval, either after certification or with a request for
> certification, **notice to class members about class counsel's fee
> motion would ordinarily accompany the notice to the class
> about the settlement proposal itself.**
> 
> ***
> 
> Besides service of the motion [for class counsel fees] on all parties,
> notice of class counsel's motion for attorney's fees must be

---

[2]    The Advisory Committee Notes to Rule 23 are entitled to weight and are routinely relied upon by the Courts. *See e.g., Amchem Products v. Windsor*, 521 U.S. 591, 614 (1997) (citing heavily to Rule 23 Advisory Committee Notes in interpreting the Rule).

Clerk of the Court
March 6, 2015
Page 8

> 'directed to the class in a reasonable manner.' **Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances.** In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with the notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e). (emphasis added).

In other words, notice to the class must include notice that there will be an application for class counsel fees, and the amount to be requested. *Id.*; *see also Manual for Complex Litigation 4th*, § 21.722 (quoting Rule 23(h) Advisory Committee Note). For whatever reason, the postcard notice mailed to the class omitted any reference to a request for class counsel fees or the amount.

The cases are virtually uniform in interpreting Rule 23(h) as requiring such notice to the class as a matter of rule and of due process. In *Stair ex rel Smith v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008), the Court held that "the class is entitled to notification of the fees and costs that class counsel reasonably intends to seek for all compensable services, perhaps expressed as an upper limit of such anticipated request. Such notice directed to the class under Rule 23(h)(1) is a prerequisite for approval of class counsel's fees. Such notice to the class should be included in the Rule 23(c)(2)(B) notice"; *see also In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993 (9th Cir. 2010)(failure to advise class of particulars of class counsel fee claim denies them due process); *In re Delphi Corp. Securities Litig.*, 248 F.R.D. 483, 506 (E.D. Mich. 2008) (failure to notify the class of intent to file a fee motion acts as a waiver under Rule 23(h)).

Clerk of the Court
March 6, 2015
Page 9

In *Carlson v. Xerox Corp.*, 355 Fed. Appx. 523 (2d Cir. 2009) the notice to class members stated that plaintiff's counsel would move for an award of attorney's fees "not to exceed 20% of the gross settlement fund", and the notice also informed class members that "you can object to the application by plaintiff's co-lead counsel for an award of fees and expenses." *Id.* at 525. Although the Court of Appeals held that the notice need not include the date of the motion for attorney's fees or how the class members could access the fee motion, the Court implicitly held that class members must be apprised of the amount of a fee application and their right to object. Because the postcard notice mailed to class members failed to do so, it failed to comply with Rule 23(h). The notice is thus defective and class members denied due process.

### III. The Magistrate Judge Lacks Authority To Grant Final Approval To The Settlement.

In this case, a Magistrate Judge is asked to enter final judgment under 28 U.S.C. § 636(c), which permits a magistrate judge to conduct all proceedings in a civil case, and to enter final judgment, but only "upon consent of the parties." *Id.* Because entering final judgment under § 636(c) deprives absent class members of their rights to adjudicate their claims before Article III judges, the statute is unconstitutional as applied to class actions, at least in the circumstances presented here, where the absent class members have not been given notice and affirmatively consented.

**A.** Article III of the Constitution vests the federal judicial power in the Supreme Court and "such inferior Courts" as Congress chooses to establish. U.S. Const. art. III, § 1. Further, Article III protects judicial independence by affording federal judges life tenure during good behavior and prohibiting Congress from reducing their salaries. *Id.*

Clerk of the Court
March 6, 2015
Page 10

Unlike Article III judges, magistrate judges are appointed to terms of either four or eight years by the judges of the district court in which the magistrate judge is selected to serve. 28 U.S.C. § 631(a), (e). An act of Congress prohibits reduction in their salaries during this term, *see id.* § 634(b), but Congress could remove this prohibition without offending the Constitution. Moreover, because magistrate judges may be (but need not be) reappointed, they lack the independence that Article III judges gain from the knowledge that, once appointed, others do not hold the key to their continued employment.

Section 636(c) has withstood constitutional challenge in the circuit courts in non-class-action cases chiefly because of the consent requirement. As the Ninth Circuit explained, "[a] mandatory provision for trial of an unrestricted class of civil cases by a magistrate and not by Article III judges would violate the constitutional rights of the litigants." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d 537, 542 (9th Cir. 1984) (en banc); *see also Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1042 (7th Cir. 1984); *Collins v. Foreman,* 729 F.2d 108, 119 (2d Cir. 1984).

"The voluntary consent requirement was designed to assuage constitutional concerns, as Congress did not want to erode a litigant's right to insist on a trial before an Article III judge." *Anderson v. Woodcreek Venure Ltd.,* 351 F.3d 911, 914 (9th Cir. 2003); *see also, e.g., Fowler v. Jones,* 899 F.2d 1088, 1093 (11th Cir. 1990) ("valid consent is the linchpin of the constitutionality of ... § 636(c)" (quoting *Adams v. Heckler*, 794 F.2d 303, 307 (7th Cir. 1986); internal quotation marks omitted)). Thus, the consent requirement seeks to legitimate what would otherwise be the unconstitutional exercise of the judicial power by magistrate judges. In an individual case, as opposed to a class action, all of the parties must indicate their consent by

Clerk of the Court
March 6, 2015
Page 11

signing a waiver that informs them of their absolute right to have their case tried by an Article III

judge before a magistrate may act under § 636(c). *See* Fed. R. Civ. P. 73(b)(1)-(2).

Class actions are different. Here, only the defendant and the named plaintiff signed a

waiver through individually retained counsel. The absent class members did not waive their right

to an Article III judge. The named plaintiffs' consent cannot stand in for that of the absent class

members.

First, when the named plaintiffs gave their consent, the class did not exist—indeed, it still

does not exist—and so the named plaintiffs were not then authorized to act on behalf of anyone.

The argument that the absentees could "consent" to the entry of a final judgment by the

magistrate judge necessarily depends on the notion of representation created by class

certification, but the named plaintiff cannot have consented for the class notion before any class

existed. The Supreme Court's recent unanimous decision in *Standard Fire Insurance Co. v.*

*Knowles*, 133 S. Ct. 1345 (2013), drives home this point. There, the Court held that a named

plaintiff's stipulation at the time he initiated the case that the class sought less than the

jurisdictional minimum for federal jurisdiction could not defeat removal because "a plaintiff who

files a proposed class action cannot legally bind members of the proposed class before the class

is certified." 133 S. Ct. at 1349. So, too, here. Jurisdiction exists, if at all, under 28 U.S.C.

§ 636(c), only "[u]pon the consent of the parties." Here, the essential feature of § 636(c) is

missing, as the named plaintiff could not bind the absent class at the time he submitted the

consent form.

Second, regardless of the timing, the waiver of the right to an Article III judge is not a

function susceptible of delegation. To be sure, the efficient administration of class-action

Clerk of the Court
March 6, 2015
Page 12

lawsuits requires that lawyers and representative plaintiffs make some decisions on behalf of the class. But this deviation from the ordinary relationship between lawyers and their clients has limits. A procedure will be invalidated "in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it." *Hansberry v. Lee*, 311 U.S. 32, 42 (1940). The absent class members' rights to an adjudication before an Article III judge involves an interest guarded by the Constitution. *Northern Pipeline*, 458 U.S. at 58. The procedure at issue here—the application of § 636(c) in class-action suits— does not "fairly insure[]" that this interest is protected because it allows a non-Article III judge to adjudicate the rights of absent class members without their consent. Section 636(c) is, therefore, unconstitutional as applied to class actions. *See Pacemaker*, 725 F.2d at 545 (suggesting "resumption of direct Article III control" would be required "where rights of numerous parties not present before the court might be affected by the decision").

Third, the lack of a procedure by which absent class members may knowingly waive their right to an Article III judge cannot be cured by presuming absent class members' consent from their silence in response to the settlement notice. Such a presumption runs contrary to the extensive case law stating that, to be constitutional, consent under § 636(c) must be knowing and voluntary. *See Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994); *Pacemaker*, 725 F.2d at 543; *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir. 1987); S. Rep. No. 96-74, at 5 (1979), *reprinted in* 1979 U.S.C.C.A.N. 1469, 1473 ("The Bill clearly requires the voluntary consent of the parties."). A robust consent requirement is necessary to "ensure[] against the wholesale delegation of certain classes of cases and discrimination among classes of litigants." *Hall*, 812 F.2d at 647. Accordingly, as the Second Circuit has explained, "accepting an 'implied' waiver would not

Clerk of the Court
March 6, 2015
Page 13

adequately protect the constitutional right to be heard by an article III judge, at least at the threshold of a party's participation in a case." *N.Y. Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 24 (2d Cir. 1993).

Here, none of the absentees can be said to have given a knowing or voluntary waiver. Indeed, the class notice failed even to apprise class members that, by participating in the proposed settlement, they will waive their constitutional right to an Article III judge. As the Supreme Court has stated, to bind absent class members in a case concerning a claim for money damages, the members must receive notice that, among other things, "should describe the action and *the plaintiffs' rights in it.*" *Phillips Petroleum Co.* at 811-12 (emphasis added); *see also Cullen*, 18 F.3d at 105 (refusing to find waiver of the right to an Article III forum where "the possibility of waiver was neither broached nor hinted at"). Here, the postcard notice does not mention at all the role of the magistrate judge in deciding the case. *See* Stipulation of Settlement, Ex. 1 (Doc. 58-2). The (undistributed) long form notice, although it mentions that the magistrate judge will preside over the fairness hearing, does not indicate that the magistrate judge would be the final decisionmaker, that the magistrate is not an Article III judge, and that litigants in federal court have the right to have their cases decided by an Article III judge unless they waive they right. *See* Stipulation of Settlement, Ex. 2. Both the postcard notice and long-form notice refer to the decisionmaker as "the Court" without further elaboration. *See* Stipulation of Settlement, Ex. 1 (explaining that one available course of action is to "[w]rite to the Court about why you don't

Clerk of the Court
March 6, 2015
Page 14

like the settlement"); *id.*, Ex. 2, at 7 ("The Court will hold a hearing to decide whether to approve

the settlement.").[3]

    **B.** Notwithstanding these concerns, three courts of appeals have held that a magistrate

judge has statutory and constitutional authority to enter a final judgment in a class action without

the absentees' consent. *See Day v. Persels & Assocs.,* 729 F.3d 1309, 1316-26 (11th Cir. 2013);

*Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 180-81 (3d Cir. 2012); *Williams v.*

*General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 268-70 (7th Cir. 1998). All three decisions

appear to have been motivated in significant part by efficiency and docket management

concerns. *Dewey*, 681 F.3d at 181; *Williams*, 159 F.3d at 269; *accord Day*, 729 F.3d at 1319.

That reasoning is at odds with those courts' acknowledgments that an absent class member may

intervene and demand that an Article III judge preside. *Day*, 729 F.3d at 1321; *Dewey*, 681 F.3d

at 180; *Williams*, 159 F.3d at 269. And the important right of absent class members to demand

adjudication by an Article III judge is for all practical purposes undercut here by the absence of

notice to the absentees that they had this option or that the settlement purported to waive their

right to an Article III judge.

    In any event, efficiency concerns are misplaced because the ruling sought would not

significantly alter the status quo. A comprehensive study found "that district court judges

approved 688 class action settlements" in 2006 and 2007, and, of the 444 attorney fee awards in

those cases, only "4 percent were approved by non-Article III judges (usually magistrate

---

[3] For an in-depth explanation of why absentees are "parties" who must consent individually under § 636(c), including an analysis of the contemporaneous understanding of "party" status at the time of § 636(c)'s enactment, *see Day*, 729 F.3d at 1331-38 (Pro, J., dissenting in part and concurring in part).

Clerk of the Court
March 6, 2015
Page 15

judges)." Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, J. Emp. L. Stud. 811, 813, 840 (2010); *see also Day*, 729 F.3d at 1335 (Pro, J., dissenting in part and concurring in part) (reviewing statistics from the Administrative Office of the U.S. Courts and concluding that the number of class actions handled by magistrate judges under § 636(c) "presumably is small"). Moreover, magistrate judges still would be available in class actions to exercise their many functions under 28 U.S.C. § 636(b).

More fundamentally, federal courts have not shied away from the consequences of rulings enforcing Article III principles even when they override congressional expedients. *Northern Pipeline*, for instance, effectively invalidated the entire federal bankruptcy scheme because non-Article III judges had been given authority to decide all manner of cases that the Constitution assigns solely to Article III judges. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982). And, in *Stern*, a decision that appears to have far-reaching consequences, the Court reminded Congress, again in the bankruptcy context, that it generally may not assign the business of Article III courts to decision makers who lack Article III protections. *See* 131 S. Ct. 2594. To serve the greater goal of judicial independence, Article III knowingly creates inefficiency by demanding that matters within the heads of federal jurisdiction in Article III, § 2—diversity, federal question, and so forth—be decided only by life-tenured judges whose salaries may not be diminished. As the Supreme Court reiterated in its most recent Article III decision, "it [should] go[] without saying that 'the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not

Clerk of the Court
March 6, 2015
Page 16

save it if it is contrary to the Constitution." *Stern v. Marshall*, 131 S. Ct. 2594, 2619 (2011)

(quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)).[4]

**C.** This Court could avoid the constitutional questions and, instead, rule on statutory

grounds that the settling parties cannot invoke § 636(c) without the consent of absent class

members. First, as recognized in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), absent class members

are "parties" for the purpose of appealing approval of a class-action settlement. Although

"[n]onnamed class members ... may be parties for some purposes and not for others." *Id.* at 9-10,

what was "most important" to Devlin's holding was that, without the right to appeal, absentees

would be bound to a decision with which they disagreed. *See id.* at 10-11. That reasoning applies

equally here because, without a right to consent individually, absentees are bound to the named

plaintiff's relinquishment of a fundamental constitutional right—the right to an adjudication

before an Article III judge. *See Day*, 729 F.3d at 1336 (Pro, J., dissenting in part and concurring

in part); *see also American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (holding that

"the commencement of a class action suspends the applicable statute of limitations as to all

asserted members of the class who would have been parties had the suit been permitted to

continue as a class action" and rejecting argument that absentees must intervene to obtain that

result) (emphasis added).

---

[4] In *Brown v. United States*, 748 F.3d 1045 (11th Cir. 2014), a unanimous Eleventh Circuit panel appeared to disagree with the court's earlier decision in *Day, id.* at 1068, and explained at length why it "harbor[ed] serious concerns as to the facial constitutionality of § 636(c)," *id.* at 1068-70. (*Brown* avoided the constitutional question by holding, on statutory grounds, that § 636(c) could not be used in the type of case before the court there, a federal habeas case under 28 U.S.C. § 2255.)

Clerk of the Court
March 6, 2015
Page 17

Second, § 636(c) applies only to "parties." If absent class members are not "parties," then the Magistrates Act was not meant to apply to absent class members at all. In other words, if the named parties can consent to waive their right to an Article III judge but absent class members cannot consent under § 636, the consequence is not the named plaintiff can consent for the absentees, but that § 636 cannot be used in a class action because it does not provide a mechanism for the absentees to waive their rights. As a result, their claims can be finally adjudicated only by an Article III judge.

## IV.   The Signature Requirement For Objectors Improperly Discourages Objections And Should Not Be Permitted.

The parties proposed and this Court approved objection procedures that are unnecessarily burdensome and calculated to discourage objections. Specifically, the objection procedures set forth in section 14.3 of the settlement agreement and explained in the long form notice to the class require that a class member's "objection must be personally signed by" the objector even if the objecting class member is represented by an attorney. Stipulation of Settlement, Ex. 2, at 7 (long form notice); *see also* Stipulation of Settlement § 5.3 (same requirement).

This provision is contrary to Federal Rule of Civil Procedure 23(c)(2)(B)(iv), which provides that a class member "may enter an appearance through an attorney if the member so desires," and 28 U.S.C. § 1654, which allows individuals to appear and conduct their cases through counsel. Somewhat ironically, the class representatives did not sign the settlement

Clerk of the Court
March 6, 2015
Page 18

agreement, but proceeded through their counsel. There is no reason why other class members should not be able to object using that same procedure.[5]

Beyond violating § 1654 and being in any event unnecessary, the signature requirement may have a significant impact on how this Court views objections. As a result of the logistical burden of a personal signature, some class members and lawyers may forgo objecting or a lawyer may choose to file objections on behalf of only one client, rather than several, because the lawyer can make the same substantive point regardless of the number of objectors. Yet an objection on behalf of a few clients may have a lesser impact than an objection on behalf of several clients on the Court's consideration of the proposed settlement, because judges often take the number of objectors into account when assessing the fairness, adequacy, and reasonableness of a proposed class-action settlement. *See, e.g., Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 321 (3d Cir. 2011) (noting that district court acted within its discretion in finding "that the minimal number of objections and requests for exclusion . . . favor[ed] settlement").

## CONCLUSION

The Court should deny final approval of the settlement.

## NOTICE OF INTENT TO APPEAR

Please note that objector counsel intends to appear at the fairness hearing. The unsigned and signed objection of Mr. Good is appended hereto.

---

[5]   Although Mr. Good has signed an objection in an abundance of caution, the class notice should not have so required, and any other objections should not be denied on that basis.

Clerk of the Court
March 6, 2015
Page 19

## CERTIFICATE OF SERVICE

I certify that a copy of this letter objection is being served upon the counsel listed below.

Respectfully submitted,

Cary L. Flitter
Flitter Lorenz, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782
cflitter@consumerslaw.com

Allison Zieve
Scott Michelman
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009
(202) 588-1000
azieve@citizen.org

CLF:jr
cc:   Andrew T. Thomasson, Esquire (via first class mail)
      Abraham Kleinman, Esquire (via first class mail)
      David N. Anthony, Esquire (via first class mail)

Bradley Good
342 W. Second St.
Media, PA  19063

March 6, 2015

**RE:**  **Thomas N. Graff, an individual; of behalf of himself and all others**
**similarly situated v. United Collection Bureau, Inc., an Ohio Corporation**
**U.S.D.C. E.D. NY, Docket No. 12-cv-02402(GRB)**

I, BRADLEY GOOD, certify that I believe I am a member of this class, that I received a post-card notice of class settlement, and that I object to the settlement for the reasons set forth in the letter-objection being filed by my attorneys.  I can be reached care of my attorneys at the telephone number listed on the letter-objection.

I object to disclosing my partial SSN as that is sensitive personal identifying information that I do not want in the public record.  However, I have provided the last four digits to my attorneys if needed to establish my file or identity outside of the public record.

DATE: _____          _____
                               BRADLEY GOOD

Bradley Good
342 W. Second St
Media, PA 19063

March 6, 2015

RE:   Thomas N. Graff, an individual; of behalf of himself and all others
      similarly situated v. United Collection Bureau, Inc., an Ohio Corporation
      U.S.D.C. E.D. NY, Docket No. 12-cv-02402(GRB)

I, BRADLEY GOOD, certify that I believe I am a member of this class, that I received a post-card notice of class settlement, and that I object to the settlement for the reasons set forth in the letter-objection being filed by my attorneys. I can be reached care of my attorneys at the telephone number listed on the letter-objection.

I object to disclosing my partial SSN as that is sensitive personal identifying information that I do not want in the public record. However, I have provided the last four digits to my attorneys if needed to establish my file or identity outside of the public record.

DATE  3.7.2015                          _____
                                          BRADLEY GOOD